UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 1:10 CR 150 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| JAMES HAZELWOOD, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Defendant James Hazelwood ("Hazelwood"), along with eleven other defendants, are charged with various offenses arising out of a purported internet-based drug trafficking organization. Currently pending before the court are Defendant Derks's First Motion for a Bill of Particulars (ECF No. 50); Defendant Kann's Motion for a Bill of Particulars (ECF No. 55); Defendant Hazelwood's Motion for a Bill of Particulars (ECF No. 200), joined in by Defendants Toennies, Darji, Ryan, and Sasaki; a request by Defendant Hazelwood for all the co-defendants to have the same discovery and for co-defendant statements from the Government (ECF No. 183), joined in by Julie Toennies, Audrey Barbara Rovedo, Dora Fernandez-Montalvo, Terence Sasaki, Vinesh Darji, Bruce Liddy, Helen Kann, Jennifer Ryan, Diego Fiorillo, Stephen Derks; Defendant Hazelwood's Motion for Home Detention (ECF No. 179); and Defendant Hazelwood's Motion to Appoint Counsel Under Criminal Justice Act (ECF No. 227).

The court held a status conference in the within case on January 12, 2011. The court has taken into consideration information received at the hearing in ruling on these Motions.

## I. MOTIONS FOR A BILL OF PARTICULARS

Upon review of the Motions, the responses, and the Indictment, as well as the arguments of counsel regarding the status of discovery at the various pretrial proceedings, including the status conference held on January 12, 2011, the court finds each of the parties are fully informed of the nature and extent of the charges against them, such that they can properly defend against the charges. Therefore, all of the Motions for a Bill of Particulars, Derks's Motion (ECF No. 50), Kann's Motion (ECF No. 55), and Hazelwood's Motion (ECF No. 200), are denied.

## II. REQUEST FOR SAME DISCOVERY AND CO-DEFENDANT STATEMENTS

Defendants allege that they are all entitled to the same discovery under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. Rule 16(a)(1)(E) reads:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, building or places, or copies of portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)   the item is material to preparing the defense;
> (ii)  the government intends to use the item in its case-in-chief at trial, or
> (iii) the item was obtained from or belongs to the defendant.

Thus, it is clear from a reading of the rule that the nature and extent of discovery required is contingent on the circumstances of each Defendant. Because this is a conspiracy case, where the Government is seeking to hold parties liable for the actions of others, Defendants must be provided information that is "material to preparing the defense" under Rule 16(a)(1)(E)(i), including the acts of others for which they may be liable. Therefore, the court orders the Government to provide

discovery related to the charges that the Defendants may be held liable for and that is material to the preparation of their defenses.

Defendants also argue that they are entitled to all co-defendant statements produced to law enforcement under Rule 16(a)(1)(E)(ii) of the Federal Rules of Criminal Procedure, because it is material that the Government intends to use in its case-in-chief. (Def. Mot. at 3, ECF No. 183.) Defendants also allege that the statements of other Defendants raise a potential *Bruton* problem and that the statements must be produced under Rule 16(a)(1)(E)(i) because they are statements that are "material to preparing the defense." (*Id.*) The Government asserts that Defendants are not entitled to the statements of any co-conspirator or co-defendant who are expected to testify at trial. The Government is correct. *See, e.g., U.S. v. Carter*, 621 F.2d 238, 240 (6th Cir. 1980) (finding that government is generally under no duty to provide the statement of a government witness until that witness has testified on direct examination); *U.S. v. Conder,* 423 F.2d 904, 910 (6th Cir. 1970) (finding that Rule 16(b) specifically exempts from pretrial discovery the statements of government witnesses). Statements by Government witnesses are producible, if at all, under the provisions of the *Jencks Act*. *See U.S. v. Wilkerson*, 456 F.2d 57, 61 (6th Cir. 1972). As to the statements not governed by the *Jencks Act*, a defendant is still not entitled under Rule 16 "to inspect the testimony of his co-defendants or to examine their statements unless they agree." *U.S. v. Turner*, 274 F.Supp. 412, 418 (E.D.Tenn. 1967); *see also U.S. v. Cole*, No. 3:08-CR-48, 2009 WL 596008, at *12 (E.D.Tenn. Mar. 6, 2009). While the court urges the parties to attempt to reach an agreement on this issue, the Government is not required to provide co-defendant statements that are not governed by the *Jencks Act*. Accordingly, the court denies Defendants' request for co-defendant statements.

### III.  MOTION FOR HOME DETENTION

On April 14, 2010, Rule 5(c)(3) proceedings were held in the Northern District of Georgia, before a magistrate judge, wherein the Government moved for detention. At the hearing, Hazelwood's father, his ex-wife, as well as his girlfriend's father, each testified about his character and all stated that they did not think he would flee the jurisdiction of the court because of his strong relationship with his two young children, ages seven and nine. After this testimony and arguments made by counsel, the magistrate judge denied the Government's detention request and entered an order setting Hazelwood's conditions of release.

Following the Order setting conditions of release, the Government, before this court, moved to revoke and/or stay this order. The court granted the Motion for Stay (ECF No. 22) and ordered Hazelwood to be transported to the Northern District of Ohio for a hearing to determine the Government's Motion for Detention. Defendant, in response, filed a Cross Motion to Lift the Stay of the Order for Release. This court ordered Hazelwood's detention because of the nature of the crime he has been charged with and the twenty year sentence he faces if convicted on all counts, the weight of the evidence against him, his lack of ties to the Northern District of Ohio, his concealment of a substantial amount of financial resources, his frequent overseas travel, his recorded conversation stating he might possibly flee overseas if caught, and his history of drug abuse. Though the Government failed to demonstrate by clear and convincing evidence that Hazelwood is a danger to any person in the community, it did show by a preponderance of the evidence, that there are no conditions that could reasonably assure his appearance. Defendant Hazelwood appealed to the Sixth Circuit. On July 21, 2010, a unanimous panel of the Sixth Circuit affirmed the court's detention order. On October 5, 2010, the defendant filed the instant motion, seeking home detention.

> Pursuant to 18 U.S.C. § 3142(f), a detention hearing
>
>> ...may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

New and material information consists of "something other than the defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *See U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at * 3 (N.D.Ohio Dec. 18, 2009). Defendant Hazelwood requests home detention because: (1) he cannot meaningfully assist in his own defense while in pretrial detention given the massive amount of discovery; (2) pretrial delay in this case is already substantial and violates Hazelwood's due process rights; (3) the detention hearing did not afford the court a fair and complete presentation of the evidence; and (4) home detention would provide substantial assurance that Hazelwood would not flee and provide all the Defendants with adequate time to prepare for trial. To the extent Hazelwood's Motion reiterates the same grounds for home detention as were raised in previous motions and at his prior hearing, the court rejects those arguments and denies relief on those grounds. For the reasons stated below, the court also rejects Defendant Hazelwood's new arguments and finds his continued detention necessary.

### A. Assistance With Trial Preparation

Defendant Hazelwood states that no appropriate arrangements have been made for his review of discovery documents by the Center where he is being detained. The court determined at a hearing held on January 12, 2011, that the Northeast Ohio Corrections Center ("NEOCC") must

allow Mr. Hazelwood to use a new computer which he has been provided to review documents. An employee of the Center confirmed at the hearing that there are no special IT requirements for his doing so. Further, NEOCC has made substantial accommodations for Mr. Hazelwood well beyond those accorded most detainees based on the complex nature of this case. Among other things, he is allowed to possess more boxes of information than other inmates, and one of five video conferencing rooms is substantially devoted to his use. For these reasons, the court denies Defendant Hazelwood's Motion for Home Detention on this ground.

Additionally, Defendant Hazelwood cites to 18 U.S.C. § 3142(i) as basis for his temporary release in order to view his discovery documents. Section 3142(i) provides that the court may "permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." For the reasons stated above, the court finds that Defendant Hazelwood's release is not warranted on this ground. Consequently, his Motion on this basis is denied.

### B. Due Process Violation

Defendant Hazelwood next asserts that his right to due process of law is violated by his continued detention. He asserts that because the amount of discovery Defendants continue to receive from the Government, the likelihood his co-defendants will request continuances to adequately prepare for trial, and the amount of time he has been in pretrial detention to date, he should be released. The Fifth Amendment prohibits punishment "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Several courts have stated that a lengthy pretrial detention may become punitive and constitute punishment in

-6-

violation of the due process clause, but no court has propounded a bright line rule as to when a period of pretrial detention becomes excessive. *See U.S. v. Salerno*, 481 U.S. 739, 747 (1987); *see also U.S. v. Miller*, No. 06-40151-JAR, 2008 WL 2783146, at *2 (D.Kan. July 15, 2008). However, numerous courts have stated that due process claims based on the anticipated length of pretrial detention are premature. *See, e.g., U.S. v. Colombo*, 777 F.2d 96, 100-01 (2d Cir. 1985); *U.S. v. Portes,* 786 F.2d 758, 768 (7th Cir. 1985); *U.S. v. Digiacomo,* 746 F.Supp. 1176, 1182 (D. Mass. 1990); *U.S. v. Woods*, No. 2:08-cr-0181-HDM-LRL, 2008 WL 4167291, at *2 (D. Nev. Sept. 3, 2008); *U.S. v. Infelise*, Nos. 90 CR 87, 90 CR 87-1, 90-CR 87-2, 90 CR 87-3, 90 CR 87-4, 90 CR 87-5, 90 CR 87-6, 90 CR 87-10, 90 CR 97-12, 1990 WL 77795, at *3 (N.D. Ill. May 15, 1990). Courts usually do not entertain due process claims when the length of the detention at the time the claim is made is less than one year. *See Woods*, 2008 WL4167291 at *2; *see also DiGiacomo*, 746 F. Supp. at 1182 (due process violation had not occurred yet where defendants had already been incarcerated four months and may not go to trial for another year); *Colombo*, 777 F.2d at 97-98, 100-01 (due process determination premature where defendant already detained seven months and could possibly be detained from 13 months to two years while case is tried); *Portes*, 786 F.2d at 768 (due process determination premature where defendant detained about four months). At the time of filing of Defendant Hazelwood's Motion, he stated that he had been in detention for more than 150 days. (Mot. for Home Det. at 5.) At this time it is not clear how much longer Defendant Hazelwood will be in pretrial detention, and it is impossible to know who will primarily be responsible for delays before trial. *See U.S. v. Infelise*, 1990 WL 77795 at *3. Assessing the responsibility for delays is an important part of analyzing whether continued detention violates the due process clause. *Id.* While the court does recognize the length of delays may raise issues of due

process objections, no such right is implicated at this time. Further, the court can make no determination at this stage of the proceedings whether Defendant Hazelwood will be subjected to an inordinate delay in the future. Therefore, his Motion for Home Detention is denied on this ground. Obviously, if there is a substantial change in circumstances, Defendant may seek to show at some future time that his detention is no longer regulatory, but has become punitive. At that time, the court may find it necessary to analyze the relevant factors, including the cause for any delays, to determine whether continued detention violates due process. However, granting a motion at this time would be "tantamount to establishing a rule that the due process clause forbids detention without bail in all multidefendant cases with voluminous evidence." *Infelise*, 1990 WL 77795 at \*4. The court declined to establish such a rule in *Infelise*, and this court endorses that conclusion. It should be noted that courts have found periods of detention as long as 33 months to be warranted in the face of claims of due process violations, but may require the Government to make a higher showing to support continued detention. *See Miller*, 2008 WL 2783146 at \*2 ("courts have found periods of thirty months or more valid under the Fifth Amendment"); *see also U.S. v. Standard*, 722 F. Supp.2d 803, 807-09 (S.D.Tex. 2010) (citing to numerous cases finding pretrial detentions much more than nineteen months do not violate due process).

### C. Evidence Previously Unavailable

Defendant Hazelwood asserts that information provided during discovery has given him the proof he needs to show that he did not personally participate in any of the 18 transactions conducted by undercover agents in this case, which "materially alters" the court's assessment of the great weight of the evidence against him, a factor under 18 U.S.C. § 3142(g). (Mot. for Home Det. at 6.) However, most of the evidence relied on by the Government did not turn on his personal

involvement. During the court's detention hearing, the Government contended it has evidence that he is the leader of a drug trafficking organization. (Det. Hearing Tr. at 19, 47, 48.) The Government also stated there are several cooperating witnesses that will testify against Hazelwood, including at least one co-defendant. (*Id.* at 22.) The court relied on the following evidence in its detention order to determine the great weight of the evidence is against Defendant Hazelwood: "(1) Title III interceptions, which include hundreds of taped conversations between Hazelwood, his employees, doctors, and pharmacists; (2) cooperating witness testimony and recordings; (3) over twenty controlled buys; (4) e-mail communications demonstrating drug-trafficking activities; (5) bank records; and (6) customer records." (Det. Order at 6, ECF No. 113.) Defendant Hazelwood's counsel already stated during the detention hearing that there were no hand-to-hand sales at issue, and that the Government was not alleging personal sales against Hazelwood. (Det. Hearing Tr. at 54, 63.) The fact that discovery has shown the lack of personal transactions does not refute the significant amount of evidence the Government presented at the hearing. This is especially true given that the court was previously made aware of the Defendant's argument that he was not personally involved in the transactions.

Defendant Hazelwood attempts to downplay the weight of the evidence against him by claiming that one of the calls provided during discovery, call no. 2014, is actually beneficial to him, in that it demonstrates his attempt to conform his business to the requirements of the law. During the call Hazelwood discusses with Diego Fiorillo, "the pending legislation that would require a doctor to see a patient in person before prescribing medication. During this conversation, Hazelwood states that if the legislation passes 'in both houses it's gonna effectively put us out of business.'" (Mot. for Home Det. at 6-7.) Defendant Hazelwood maintains that this is inconsistent

with the Government's claims that he headed a drug trafficking organization and knowingly violated federal laws. (*Id.*) This excerpt of this phone call does not dramatically alter the evidence against Hazelwood. A knowledge of pending legislation and how it will affect his business, does not change or reduce the rest of the evidence against Hazelwood, as cited above, and which includes other phone conversations, records, and cooperating witnesses. It may also be read to be consistent with the Government's theory and claims at the detention hearing, that certain events would force the Defendant to alter his business model, yet still enable him to continue to violating the law. (Det. Hearing Tr. at 100.) This is not definitive proof that the Defendant ran a law-abiding business, nor that he would necessarily do so in the future. When considered in conjunction with the excerpted phone calls played or summarized at the hearing, and the rest of the evidence presented by the Government, the weight of the evidence against Hazelwood continues to be substantial. Therefore, the Defendant's Motion is also denied on this ground.

### D. Home Detention and Other Conditions

Defendant Hazelwood asserts that in light of his difficulty viewing his discovery documents and the violation of his due process rights, he should be put in home detention. He contends that home detention along with other conditions would provide reasonable assurance that he would not flee. The court does not find this argument well taken. For the reasons stated above, Defendant Hazelwood's arguments regarding discovery access and the violation of his due process rights, must fail. The rest of the Defendant's arguments regarding home detention were already put forth in the May 21, 2010 detention hearing. For the same reasons stated in the May 25, 2010 detention order,

and affirmed by the Sixth Circuit, there continue to be no conditions that will reasonably assure that Hazelwood will not flee.[1] These reasons are:

> (1) the significant charges raised against him and the fact that he could face a mandatory minimum of twenty years in prison if convicted; (2) the Government's showing that Hazelwood concealed money in overseas accounts, such that he has the ability to flee; (3) his extensive overseas travel; (4) the recorded conversation, wherein he states that in the event of his arrest related to his business "he would hate to have to go overseas"; (5) his unreported drug use; and (6) his lack of ties to this jurisdiction.

(Det. Order at 11.)  Therefore, the court concludes that continued pretrial detention is warranted in this case.

### IV. HAZELWOOD'S MOTION TO APPOINT COUNSEL

During the pretrial hearing on January 12, 2011, the court discussed the pending Motion to Appoint Counsel Under Criminal Justice Act, requesting current counsel for Defendant Hazelwood be appointed counsel due to his lack of financial resources. The court instructed him to file an updated financial affidavit. The court also instructed the Government to provide the nature, extent, and amount of the resources of Mr. Hazelwood that it has frozen, and to consider whether some of

---

[1] The court also notes that in his reply brief Defendant Hazelwood contends that the Government's claim that he has millions of dollars in overseas accounts that would fund his flight is false, and that he is not aware of any records produced in discovery that he has a "material amount of assets in any account anywhere to sustain flight." (Reply Brief in Support of Mot. for Home Det. At 4, ECF No.197.)  However, as stated in *U.S. v. Petters*, No. 08-364, 2009 WL 205188, at *2 (D.Minn. Jan. 28, 2009), "the mere fact that the Government has not, to date, uncovered secreted assets does not mean that such assets do not exist. Indeed as their name suggests, secreted assets are just that: secret."  The court further stated that "Defendant would have great incentive to keep any such assets concealed, particularly if he were to be successful on the instant Motion." (*Id.*)  Based on this reasoning and that Hazelwood has already disputed this assertion at the detention hearing, the Motion is denied on this basis as well.

said resources might be used in his defense thereby obviating the need to have lawyers appointed on the basis of him being indigent.  Both parties are to present this information to the court within 7 days.

### V.  CONCLUSION

For the foregoing reasons, the court denies Defendant Derks's First Motion for a Bill of Particulars (ECF No. 50); denies Defendant Kann's Motion for a Bill of Particulars (ECF No. 55); denies Defendant Hazelwood's Motion for a Bill of Particulars (ECF No. 200); grants in part and denies in part a request by Defendant Hazelwood for all the co-defendants to have the same discovery and for co-defendant statements from the Government (ECF No. 183); denies Defendant Hazelwood's Motion for Home Detention (ECF No. 179) and hereby orders Defendant Hazelwood to continue being detained pending trial; and orders the parties to submit the requested information for Defendant Hazelwood's Motion to Appoint Counsel Under Criminal Justice Act (ECF No. 227) within seven days.

IT IS SO ORDERED.


/s/*SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

February 16, 2011